The STATE of Tennessee, on relation of Hollis BARKER, General Sessions Court Judge of Sequatchie County, Tennessee, Plaintiff–Appellee,

v.

Bill HARMON, County Executive, and the County Commissioners for Sequatchie County, Tennessee, Defendants–Appellants.

Supreme Court of Tennessee,
at Nashville.

Aug. 1, 1994.

Paul A. Swafford, Jasper, Stewart M. Crane, Knoxville, for appellants.

Howard L. Upchurch, Upchurch & Upchurch, Pikeville, for appellee.

## OPINION

ANDERSON, Justice.

In this appeal, we are asked to decide whether a private legislative act,[1] which authorized a monthly expense allowance for a General Sessions Judge, violates Article VI, § 7 of the Tennessee Constitution,[2] which prohibits increasing or diminishing judges' salaries during their term of office.

The trial court found that the expense allowance was an increase in compensation during the judge's term of office and was, therefore, unconstitutional. The Court of Appeals affirmed the trial court, finding that the private act was unconstitutional, but concluded that the doctrine of elision should be applied to the effective date of the act. Removing the act's effective date would authorize the expense allowance for the judge's new term of office. The Court of Appeals also required the judge to reimburse the county for the expense allowance received during his term of office.

 We affirm the Court of Appeals' finding that the private act is unconstitutional under Article VI, § 7 of the Tennessee Constitution. We do not agree, however, that the doctrine of elision applies because we cannot conclude, clear of doubt from the face of the statute, that the General Assembly would have passed the private act without the effective date. We also do not agree that the judge should be required to reimburse the County the expense allowance received because every act of the General Assembly is presumptively constitutional until judicially declared otherwise.

## BACKGROUND

The plaintiff, Judge Hollis Barker, a county school bus driver and non-lawyer, was elected to an eight-year term as general sessions judge for Sequatchie County beginning September 1, 1974. Judge Barker was re-elected for a second term beginning September 1, 1982, and a third term beginning September 1, 1990.

In 1983, Judge Barker and the county attorney drafted a proposed private act authorizing a monthly expense allowance of $400 for the general sessions judge of Sequatchie County. The County Commission approved the act, the legislature passed it, and thereafter the County Commission ratified it. Chapter 79 of the 1983 Private Acts became effective on July 31, 1983 and, in pertinent part, provides:

> SECTION 1. In addition to the salary of the General Sessions Judge as provided by general law, the General Sessions Judge of Sequatchie County, Tennessee, shall receive an expense allowance of four hundred dollars ($400) per month. The expense allowance shall be paid out of the ordinary funds of the county. The General Sessions Judge shall give all of his working time to the duties of his office.

After the passage of the private act, Judge Barker gave up his job as a county school bus driver. The full $400 expense allowance was paid monthly to Judge Barker by separate check beginning in July of 1983 and continuing through August of 1990. The County did not require Judge Barker to document his expenses, and he did not do so. Payment of the expense allowance was eliminated from the budget in August of 1990 by the Sequatchie County Commission. There was proof that for six years annual state audits had listed the lack of documentation for Judge Barker's expenses as an audit find-

---

1. Chapter 79, Private Acts of 1983.

2. Art. VI, § 7 provides in pertinent part: "The Judges of the Supreme or Inferior Courts, shall, at stated times, receive a compensation for their services, to be ascertained by law, which shall not be increased or diminished during the time for which they are elected."

ing; however, no reason was given by the County Commission for the termination of the expense allowance.

Thereafter, Judge Barker filed a petition for *writ of mandamus* seeking to require the County Commission to resume payment of the $400 monthly expense allowance. The defendants responded by attacking the constitutionality of the private act and also asked for a judgment requiring Judge Barker to reimburse Sequatchie County for all payments paid under the act. As a fall-back position, Judge Barker argued that the constitutionality of the act could be upheld by eliding the 1983 effective date, thereby making the expense allowance applicable to his third term of office, beginning on September 1, 1990.

At the trial of the cause, Judge Barker, a non-lawyer, testified that at the time the private act was drafted, the county attorney advised him that it was unlawful for his salary to be increased during his term; however, there was no proof that the county attorney interpreted the expense allowance as an increase in salary, nor was there any proof that he advised Judge Barker or any County official to that effect. Judge Barker said that his monthly expenses were "much less" than the $400 per month he was paid pursuant to the act.

Based on all the evidence, the trial court found that the expense allowance was an increase in compensation in violation of Article VI, § 7 of the Tennessee Constitution, that the doctrine of elision could not be applied to save the act, and that Judge Barker was not required to repay the expense allowance received. On appeal, the Court of Appeals affirmed the trial court's finding regarding the constitutionality of the act, but applied the doctrine of elision to save the constitutionality of the act for the term beginning September 1, 1990. The Court of Appeals also decided that Judge Barker had to reimburse the county for the expense allowance received.

### *CONSTITUTIONAL CHALLENGE*

■ We examine first the defendants' contention that the expense allowance was an increase in compensation during Judge Bark-

er's term of office, in violation of the Tennessee Constitution. Article VI, Section 7 of the Tennessee Constitution provides as follows:

> The Judges of the Supreme or Inferior Courts, shall, at stated times, receive a compensation for their services, to be ascertained by law, which shall not be increased or diminished during the time for which they are elected.

General Sessions courts are inferior courts within the meaning of the constitutional provision. Accordingly, increasing the compensation of a general sessions judge during the term for which the judge is elected is prohibited by the Constitution. *Thrasher v. Lively,* 195 Tenn. 630, 263 S.W.2d 497 (Tenn.1953). As a result, the validity of the private act depends upon whether the expense allowance was in fact an increase in compensation during the term for which Judge Barker was elected.

In *Peay v. Nolan,* 157 Tenn. 222, 237, 7 S.W.2d 815, 819 (Tenn.1928), this Court stated that the constitutionality of an act depends on its purpose and effect. We also declared that the test for determining whether an expense allowance should be considered compensation was as follows:

> To sustain an appropriation in gross as an allowance for expenses and not a forbidden increase of compensation, the sum must be within such reasonable limits as to authorize the conclusion that the sum in gross might be covered by a certified statement of the official expenses incurred by the designated beneficiary. An appropriation in gross so large as to suggest that it would not be covered by an itemized statement of official expenses, and so appropriated as to make it the absolute property of the official without regard to actual expenses, is an increase in compensation.

*Id.*

When viewed in light of the principles set forth above, it is clear that the expense allowance authorized by Chapter 79 of the 1983 Private Acts was in fact an increase in compensation. Judge Barker conceded that his actual expenses were "much less" than the monthly allowance he received in gross. Accordingly, we affirm the Court of Appeals'

finding that Chapter 79 of the 1983 Private Acts is unconstitutional under Article VI, § 7 of the Tennessee Constitution.

## *ELISION*

Having determined that Chapter 79 of the 1983 Private Acts is unconstitutional, we must now consider whether Section 3 of the act, setting its effective date as July 1, 1983, can be stricken and the remainder of the act upheld so as to be applicable to Judge Barker's new term of office that began on September 1, 1990.

█ The doctrine of elision allows a court, under appropriate circumstances when consistent with the expressed legislative intent, to elide an unconstitutional portion of a statute and find the remaining provisions to be constitutional and effective. *Lowe's Companies, Inc. v. Cardwell,* 813 S.W.2d 428, 430 (Tenn.1991). As we discussed in *Gibson County Special School Dist. v. Palmer,* 691 S.W.2d 544 (Tenn.1985):

The doctrine of elision is not favored. The rule of elision applies if it is made to appear from the face of the statute that the legislature would have enacted it with the objectionable features omitted, and those portions of the statute which are not objectionable will be held valid and enforceable ... provided, of course, there is left enough of the act for a complete law capable of enforcement and fairly answering the object of its passage. However, a conclusion by the court that the legislature would have enacted the act in question with the objectionable features omitted ought not to be reached unless such conclusion is made fairly clear of doubt from the face of the statute. Otherwise, its decree may be judicial legislation. The inclusion of a severability clause in the statute has been held by this Court to evidence an intent on the part of the legislature to have the valid parts of the statute enforced if some other portion of the statute has been declared unconstitutional.

*Id.* at 551 (internal citations and quotations omitted).

This Court faced a situation similar to that presented here in *Bayless v. Knox County,* 199 Tenn. 268, 286 S.W.2d 579 (Tenn.1956). There, a private act was passed in 1947 that attempted to increase the salary of three general sessions court judges during their terms of office. Taxpayers challenged the salary increase. The *Bayless* Court elided the effective date of the private act, which made the salary increase operative at the beginning of the next term of office in 1950. The Court's reason for the elision was that:

It is reasonable to conclude that the 1947 Legislature would have enacted this statute effective at the commencement of the next term with the illegal provision omitted. It does not seem reasonable to conclude to the contrary, because, if the Legislature thought an increase in 1947 desirable, certainly it would think the same as to the next term of office.

*Id.* at 278, 286 S.W.2d at 584.

Although, at first glance, *Bayless* may appear to support elision in the present case, upon closer review, there are significant distinctions which mandate a different result here. Perhaps most significant is the fact that the private act under examination in *Bayless* contained a severability clause, which is evidence of the legislative intent to uphold and enforce valid portions of the act. The Sequatchie County private act contained no similar provision. Moreover, the Sequatchie County private act was passed seven years before the expiration of Judge Barker's term, whereas the private act under review in *Bayless* was enacted only three years before the expiration of the judges' terms of office. Finally, seven years after the passage of the Sequatchie County private act and at the beginning of a new judicial term in 1990, the General Assembly, in a comprehensive piece of legislation, overhauled the salary structure for general sessions judges. *See* Tenn.Code Ann. § 16–15–5001 through 5011 (Supp.1993). Based on the foregoing, we cannot conclude, fairly free of doubt, that the legislature would have passed the Sequatchie County private act with the effective date omitted. Elision is not favored and is not appropriate in this case. Accordingly, Judge Barker is not entitled to receive the monthly expense allowance for the new term that

began on September 1, 1990. The judgment of the Court of Appeals is reversed.

### REIMBURSEMENT

Finally, we must consider whether Judge Barker is obligated to reimburse the defendants for the expense allowance received from July 1983 through August of 1990.

In *Franks v. State*, 772 S.W.2d 428 (Tenn. 1989), this Court considered whether payments made to a general sessions judge pursuant to an unconstitutional statute could be recovered from the judge by the county. There, the statute granted the general sessions judge a supplemental income because she acted as the juvenile court judge. Although the statute was declared unconstitutional, the *Franks* court held that the county could not recover the payments previously made to the judge. In so deciding, this Court, in *Franks*, discussed two approaches courts have used when faced with an unconstitutional statute.

> Under the "void ab initio" approach, an unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed. *Norton v. Shelby County*, 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178 (1886).
>
> However, in *Roberts v. Roane County*, 160 Tenn. 109, 23 S.W.2d 239 (1929) this Court recognized "that parties may so deal with each other upon the faith of such a statute that neither may invoke the aid of the courts to undo what they themselves have done." *Id.* at 124, 23 S.W.2d at 243. Because of the presumption in favor of the constitutionality of statutes, the public and individuals are bound to observe a statute though unconstitutional, until it is declared void by an authoritative tribunal. *O'Brien v. Rutherford County*, 199 Tenn. 642, 288 S.W.2d 708 (1956)....

*Id.* at 431. *See also Cumberland Capital Corp. v. Patty*, 556 S.W.2d 516 (Tenn.1977); *Bricker v. Sims*, 195 Tenn. 361, 259 S.W.2d 661 (1953); *State v. Hobbs*, 194 Tenn. 323, 250 S.W.2d 549 (1952); *Compare, Newton v. Cox*, 878 S.W.2d 105 (Tenn.1994) (discussing the differences between contracts which are "void" and those which are merely "voidable").

Other state courts considering the effect of an unconstitutional statute have also concluded that the "void ab initio" approach announced in *Norton, supra,* is not appropriate for all circumstances. Accordingly, where parties have acted in reasonable reliance on the existence and validity of a statute, as in Tennessee, courts in other jurisdictions have given prospective application to a judicial determination that the statute is unconstitutional. *See American Mfrs. Mut. Ins. Co. v. Ingram*, 301 N.C. 138, 271 S.E.2d 46, 51–52 (1980) (citing cases); *see also Perkins v. Eskridge*, 278 Md. 619, 366 A.2d 21, 27–32 (1976) (discussing the development of the "void ab initio" and "presumption of validity" approaches) (overruled on other grounds by *Parrott v. State*, 301 Md. 411, 483 A.2d 68 (1984)). Even the United States Supreme Court has retreated from its broad statement in *Norton*, and recognized that the actual existence of a statute, prior to a judicial determination of its constitutional invalidity "is an operative fact and may have consequences which cannot be justly ignored." *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 374 60 S.Ct. 317, 318–319, 84 L.Ed. 329 (1940).

Accordingly, in deciding whether the defendants are entitled to the claimed reimbursement, the determinative issue is whether Judge Barker reasonably relied upon the validity of the private act authorizing the monthly expense allowance when he accepted the monthly checks from July of 1983 through August of 1990. The defendants say that Judge Barker's reliance on the constitutional validity of the private act was not reasonable, because he was told by the county attorney that it would be unlawful to have his salary increased during his term of office. In our view, that statement, without context and standing alone, does not demonstrate that Judge Barker acted unreasonably by accepting the expense allowance in reliance on the private act. There is nothing in the record to indicate that the county attorney informed Judge Barker, a non-lawyer, or any County official, that the expense allowance would be, or might be, interpreted as a sala-

ry increase or an increase in compensation. Indeed, this judicial proceeding arose because that issue was open for question. Moreover, the county attorney drafted the private act with the County Commission's authority and approval. Thereafter, the legislature passed the act; the County Commission ratified the act and authorized payment of the expense allowance under the act for a period of seven years. In accordance with the provisions of the act and in reliance thereon, Judge Barker became a full-time judge and gave up other employment. We are convinced that this case fits squarely within the rule discussed and applied in *Franks*, and therefore conclude that Judge Barker reasonably relied on the validity of the private act. Accordingly, the Court of Appeals' judgment requiring Judge Barker to reimburse the amounts paid pursuant to the private act from July of 1983 through August of 1990 is reversed, and the trial court's judgment reinstated.

### *CONCLUSION*

We hold Chapter 79 of the Private Acts of 1983 unconstitutional because the monthly expense allowance was an increase in judicial compensation in violation of Article VI, § 7 of the Tennessee Constitution. Because we cannot conclude, clear of doubt from the face of the statute, that the legislature would have passed the private act without the unconstitutional effective date, we hold the doctrine of elision may not be applied. Finally, we hold that Judge Barker is not required to reimburse the county for the expense allowance received from July 1983 to August 1990 because he reasonably relied upon the validity of the private act. The Court of Appeals' judgment is modified accordingly, and the case is remanded. Costs are taxed equally between Judge Barker and the defendants.

REID, C.J., and DROWOTA, O'BRIEN and BIRCH, JJ., concur.